## David J. Geraty *vs.* Charles Kaufman.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

564

Argued June 15th—decided August 16th, 1932.

*Lawrence A. Howard* and *Cyril Coleman,* for the appellant (defendant).

*David M. Reilly,* with whom was *John J. Sullivan, Jr.,* for the appellee (plaintiff).

BANKS, J. The complaint alleged that the plaintiff, a member of the Connecticut National Guard, while in the line of duty was thrown from his horse and suffered a fracture of both bones of his left leg; that the defendant, a physician and surgeon, undertook to reduce the fracture and heal the leg, and that as a result of his negligent treatment the plaintiff suffered the injuries for which he seeks to recover. In a second defense of the answer, the defendant alleged that a large sum of money had been awarded to the plaintiff by the State of Connecticut on account of the injuries alleged in the complaint, and that this award constituted a full satisfaction for all of his injuries. In a third defense it was alleged that this award by the State constituted a partial satisfaction for the plaintiff's injuries. The plaintiff demurred to these defenses upon the grounds, in substance, that it did not appear that any payment to the plaintiff by the State was made on behalf of the defendant or by a joint tort feasor, and that the defendant had no legal or equitable right to share in the amount so paid, and the court sustained the demurrer. The same question was involved in certain rulings on evidence made upon the trial. The plaintiff was asked upon cross-examination if he had received any money from the State as compensation for his injuries. The court sustained an objection to this question and to all further inquiry of the plaintiff as to the amounts paid him by the State. The defendant also offered evidence to prove that a board of officers was appointed under the statute to determine whether the plaintiff's injuries were incurred in the line of duty, and that an award was made in his favor based upon the principles of the Workmen's Compensation Law. This evidence was also excluded.

Section 784 of the General Statutes provides, in part,

as follows: "The board of finance and control is authorized to pay, to any officer or enlisted man of the Connecticut National Guard or Naval Militia who has been or shall be injured in the line of duty, and to his dependents if such officer or enlisted man shall have been killed in the line of duty, such sum or sums as it shall deem advisable."

The question presented upon the demurrer to the answer, and by these rulings upon evidence, is whether a payment by the State to the plaintiff, in accordance with the terms of this statute, on account of injuries received by him in the line of duty, constitutes a defense to his action against the defendant for malpractice in the treatment of such injuries. The defendant's argument runs as follows: The defendant in a negligence action is liable for the aggravation of the plaintiff's injuries caused by the negligence of an attending surgeon since it is deemed to be the proximate result of the original tort. A general release given the original tort feasor discharges the surgeon from liability for malpractice upon the ground that a release and satisfaction of the whole is a release and satisfaction of a part. A similar rule, it is claimed, obtains in compensation cases, from which it would follow that an aggravation of a compensable injury caused by the negligence of an attending surgeon is itself compensable, and therefore an award against the employer, being a settlement of his entire liability, is a complete discharge of the surgeon. The defendant claims that, though the present action involves neither a settlement of a negligence action nor an award in a compensation case, the payment which is alleged to have been made by the State, and which the defendant was prepared to prove was made under the statute upon the basic principles of the compensation law, furnishes a perfect analogy to an award under the Compensation

Act, and constitutes a satisfaction of the plaintiff's claim against the defendant, and a complete defense to this action. If we assume, for the sake of the argument, that the plaintiff is, as the defendant claims, in the position of an employee who has received compensation from his employer for an injury caused by the negligence of a third person, the question would be whether the receipt of such compensation would operate as a discharge of his cause of action against the tort feasor. The defendant has cited a number of cases holding that such would be its effect, but the decision in each of these was controlled by Compensation Acts, either providing, as in Massachusetts, that the employee may at his option proceed against the third person or the insurer of his employer, but not against both, or, as in Washington, that the employee's exclusive remedy is against his employer under the Compensation Act, or which contain provisions otherwise requiring such conclusion. The Compensation Acts in most of the States contain provisions dealing with the rights and remedies of an employee who is injured by the negligence of a third person. They vary in character, and have been construed in numerous decisions. The cases will be found in comprehensive annotations in 19 A. L. R. 766, 27 A. L. R. 493, 37 A. L. R. 838, and 67 A. L. R. 249. They hold pretty uniformly that, where the Compensation Act does not by its terms deprive the employee of his common-law right of action against a third person whose negligence has caused the injury, receipt of compensation under the Act does not discharge the liability of the tort feasor. We cite a few illustrative cases. *McArthur* v. *Flint Oil Co., Inc.*, 50 R. I. 226, 146 Atl. 484; *Foster* v. *Congress Square Hotel Co.*, 128 Me. 50, 145 Atl. 400; *Book* v. *Henderson*, 176 Ky. 785, 197 S. W. 449; *Black* v. *Chicago G. W. R. Co.*, 187 Iowa, 904, 174 N. W. 774; *Jaco-*

*wicz* v. *Delaware, L. & W. R. Co.*, 87 N. J. L. 273, 92 Atl. 946; *Podgorski* v. *Kerwin*, 144 Minn. 313, 175 N. W. 694; *O'Brien* v. *Chicago City Ry. Co.*, 305 Ill. 244, 137 N. E. 214; *Moeser* v. *Shunk*, 116 Kan. 247, 226 Pac. 784; *Wood* v. *Vroman*, 215 Mich. 449, 184 N. W. 520.

Liability under our Workmen's Compensation Act rests solely on contract. An injured employee is entitled to receive from his employer such compensation as is provided in the Act. It may bear but a remote relation to the damages he would be entitled to recover in a common-law action of tort for the same injuries. Our Act recognizes this, and specifically provides that when any injury has been sustained by an employee under circumstances creating in some person other than the employer a legal liability to pay damages, an award of compensation shall not affect his right of action against such other person for damages. It permits the employer to join as a party plaintiff in such action, and provides that if the damages recovered are in excess of the compensation which he is obligated to pay, they shall be assessed in his favor to the extent of his obligation and the excess shall be assessed in favor of the injured employee. General Statutes, § 5231. It is clear that it was not the intention of the legislature that the wrongdoer should benefit by the payments of compensation made to the injured employee by his employer. He is not permitted to benefit from payments made by persons who are not joint tort feasors, "whether the motive impelling their payment be affection, philanthropy, or contract." *Roth* v. *Chatlos*, 97 Conn. 282, 287, 116 Atl. 332; *Dickerson* v. *Connecticut Co.*, 98 Conn. 87, 118 Atl. 518. The employer is not a joint tort feasor, in the case of an injury caused by the negligence of another, and when his only obligation is that arising under the

terms of the Compensation Act. That is an obligation arising out of the contract of employment, fixed by statute, and having no relation to the liability to the injured person arising out of the negligence of the tort feasor. Conceding that a defendant cannot escape liability by showing that the plaintiff has received compensation for his injuries from a third person, whether through gift or contract, the defendant contends that if he can show that the plaintiff has received satisfaction for his injuries from a third party who was legally liable for those injuries, he has a complete defense. But an employee who has received compensation under the Act has not received satisfaction for his injuries, nor has he received it from one who was legally liable for those injuries. He has received certain payments to which, under his contract of employment, he became entitled by virtue of the statute, but which were not paid in satisfaction of his claim for damages resulting from his injuries, and which were paid by one who was not legally liable to him for such damages.

Whether the plaintiff as a member of the Connecticut National Guard was in the position of an employee of the State, and whether the statute above quoted imposed a legal obligation upon the State to pay him compensation for injuries received in the line of duty, are questions which it is not necessary to consider, since, even if they were answered in the affirmative, the receipt of such compensation by the plaintiff would not operate as a discharge of his cause of action against the defendant. The court did not err in sustaining the demurrer to the second and third defenses, nor in the rulings on evidence referred to.

On July 11th, 1929, the plaintiff suffered a spiral fracture of both bones of the left leg when a cavalry horse on which he was riding stumbled and fell, and rolled on him. He was taken to a hospital in New

London where the defendant, a practicing physician and surgeon of New London, reduced the fracture, and applied a circular plaster cast which extended from above the knee down to the foot. The plaintiff offered evidence that the standard practice in the treatment of such a fracture was the same throughout the State, and required that the cast should be split within a few hours after it was applied, and that if left solid for a longer period it should be split upon the first signs of impairment of circulation, and the pressure relieved. The plaintiff offered proof that on the day following the accident he complained to the defendant of pain and pressure at the foot, that the foot was numb, the toes blue, and there were other signs of impairment of circulation; that on the next day he became weak and dizzy, his toes were black and the foot numb, and the defendant then split the cast but bound it up with tape so that it was not spread open; that on the next day his toes were still black, and the edges of the cast were spread so that there was an opening of about an inch, but the numbness continued until July 17th when the cast was removed entirely. Ulcers appeared on the back and both sides of the foot, due to the pressure from the cast, which discharged pus for a long time after its removal. The tissue at the ulcerated area sloughed off to such an extent that two extensor tendons were destroyed and the Achilles tendon destroyed to a great extent. Because of the ulcers it has been impossible to immobilize the leg, there has been no satisfactory union of the fractures, the plaintiff's leg has become shortened one and a half inches, and he is permanently lame. The plaintiff offered proof that this condition resulted from the defendant's failure to exercise the care, skill and diligence that surgeons in the same general line of

practice in the same general neighborhood would have exercised.

The defendant offered proof that the practice obtaining in New London and elsewhere in the State was not to split the cast in the absence of definite evidence of impairment of circulation, and that there was no evidence of such impairment prior to the time when he split the cast; that the sloughing areas about the ankle were not caused by cast pressure but by the original crushing injury, pressure caused by internal hemorrhage and injury, and infection entering from the abraded surface or from the blood stream, and that in his treatment of the plaintiff the defendant in all respects exercised due care and skill.

The defendant requested the court to charge that where doctors disagree in opinion it is enough if the treatment employed has the approval of at least a respectable minority of the medical profession, and that if there are distinct and different schools of practice, and a practitioner of one of those schools is called in, his treatment is to be tested by the general doctrines of his school and not by those of other schools. The finding does not show that the proof offered by the parties was such as to require the court to charge as requested. It does not appear that there was testimony as to the treatment which would be given by different schools of practice making necessary, as in *Force* v. *Gregory*, 63 Conn. 167, 27 Atl. 1116, a warning to the jury that they were not to determine the comparative merits of the two schools, and that the defendant's treatment was to be judged only by the practice of his own school. There was a conflict in the evidence of the experts, as is to be expected in such cases, as to whether the defendant's treatment was in accordance with good practice, and the court correctly charged that, in determining what consti-

tutes reasonable care, skill and diligence in such cases, the test is that which physicians and surgeons in the same general neighborhood, in the same general lines of practice, ordinarily have and exercise.

The defendant's request that the court charge that the fact that the unfortunate result might have been avoided does not render a physician liable if he used proper skill and care and his best judgment, was sufficiently covered by the court's charge that if a physician exercises reasonable and ordinary skill, care and diligence he is not liable for unsatisfactory results, and that an unfavorable result does not of itself raise any presumption of want of such care, skill and diligence.

The claim that the charge did not fairly and adequately state the defendant's claims is without merit, as are the other criticisms of the charge, which do not require discussion.

The plaintiff produced a surgeon who testified that he specialized in orthopedic surgery, that he had charge of the fracture work in a hospital in Bridgeport for eight years, and had done fracture work in hospitals in Milford, Derby and New Haven, who was asked if he knew the usual custom of physicians and surgeons in the general neighborhood of Connecticut in the matter of the application of plaster casts and replied in the negative. A long hypothetical question was then propounded purporting to detail the defendant's treatment of the plaintiff's leg, and the witness was asked whether, taking into consideration all the factors stated in the question, lack of due care and skill was shown on the part of the attending surgeon. The question was objected to on the ground that, in view of the answer of the witness to the first question, he was not in a position to answer the hypothetical question. The evidence as to the experience of the witness

in fracture work in different cities in the State would seem to be sufficient to qualify him to answer the hypothetical question in spite of his negative answer to the first question, which the statement of the ruling in the record indicates may have been misunderstood by both witness and counsel.

Other expert witnesses were produced by the plaintiff who were permitted to testify as to the practice in this State in the matter of the application and treatment of plaster casts, over the objection of the defendant who claimed that the testimony should be limited to the practice in the community where the defendant practiced. The test in this State, in determining what constitutes reasonable care, skill and diligence, is that which physicians and surgeons in the same general neighborhood and in the same general line of practice ordinarily have and exercise in like cases. *Force* v. *Gregory, supra.* The court so charged the jury, and also charged that it was for them to say whether New Haven and New London were in the same general neighborhood from a medical standpoint, and no exception was taken to this portion of the charge. While it is held that, in the application of the test, regard must be had to the advanced state of the profession at the time of treatment (*Force* v. *Gregory, supra*), we recognize that a country surgeon should not be expected to exercise the high degree of skill possessed by eminent surgeons living in large cities and making a specialty of surgical operations. *Small* v. *Howard,* 128 Mass. 131. For this reason it is generally held that some reasonable territorial limitation should be fixed in determining the standard of comparison, and in some jurisdictions it has been held to be that of physicians and surgeons in "the same neighborhood," or "the same locality." Our rule does not restrict the territorial limitation to the confines of the town or city

in which the treatment was rendered, and under modern conditions there is perhaps less reason than formerly for such restriction. There is now no lack of opportunity for the physician or surgeon in smaller communities to keep abreast of the advances made in his profession, and to be familiar with the latest methods and practices adopted. It is not unreasonable to require that he have and exercise the skill of physicians and surgeons in similar localities in the same general neighborhood. It may not be sufficient if he exercise only that degree of skill possessed by other practitioners in the community in which he lives. *Viita* v. *Fleming,* 132 Minn. 128, 155 N. W. 1007, L. R. A. 1916D, 644; *Sheldon* v. *Wright,* 80 Vt. 298, 67 Atl. 807; 21 R. C. L. 386. The question involved in these rulings is the slightly different one of whether a surgeon, in order to qualify and testify as an expert in such a case as this, must be familiar with the practice in the particular community where the treatment was given, or if it is sufficient if he is acquainted with the general practice in the State. If, as we have indicated, a surgeon may be expected to be familiar with the methods and practices of surgeons in similar localities beyond the limits of his own community, we think that a surgeon may properly be permitted to testify as to the general practice in the State in the application and treatment of plaster casts. It may fairly be assumed that the standard practice in such a matter would not materially differ in the various hospitals in the State and in fact there was evidence in the case that this was true. There is no unfairness to the defendant in admitting such evidence, and a case might well arise in which it would be a practical impossibility for the plaintiff to procure expert witnesses who could testify that they knew what the practice was as to a particular operation in a particular community. The

court did not err in admitting this evidence. One of the doctors introduced by the plaintiff, having testified that in his opinion the defendant was guilty of malpractice, was asked on cross-examination whether he knew that malpractice was the failure to have or use ordinary care and skill. Of course as applied to a physician such a definition of malpractice was entirely inadequate and the trial court properly excluded the question. The other rulings on evidence to which exception was taken were either clearly right or not of sufficient importance to constitute reversible error.

While this case was being tried there appeared in a daily newspaper, having a circulation in New Haven and surrounding towns, an article relating to the trial which contained the following paragraph: "Doctor Kaufman was called to the witness stand for direct examination, shortly after court opened today, by Arthur E. Howard, Jr., counsel for the insurance company, with which the defendant is insured. He is the nominal counsel for the defendant, however, because, in such cases, the insurance companies never appear as defendants of record." The defendant moved for a mistrial, and also moved that the court inquire of the jury to ascertain if any of them had read the article, both of which motions the court denied. Thereafter the defendant moved to set the verdict aside on the ground that it may have been influenced by this article, and because of the court's failure to declare a mistrial, and to inquire of the jurors whether they had read the article, which motion the court denied. The defendant assigns as error the court's denial of the motion to set aside the verdict, and its failure to include in its charge a warning to the jury to disregard the article if any of them had read it.

Insurance against loss or damage from accident or negligent conduct is so universal that jurors as well

as courts must be assumed to be cognizant of it. If any of the members of the jury read the article in question it would be at most a matter of speculation whether it would have created any prejudice in their minds affecting their verdict. Whether any of them read it is also speculative. It does not appear, nor is it claimed, that any copies of the paper were found in the jury room, as in *State* v. *Carta,* 90 Conn. 79, 96 Atl. 411. True, the court declined to permit inquiry of the jury to ascertain if any of them had read the article. Whether or not such inquiry should, under the circumstances, be made was a matter within the discretion of the court. When the fact that defendant carried insurance has appeared upon the trial some judges have deemed it wise to warn the jury that that fact had no bearing upon the issues and should be dismissed from their consideration. The circumstances of its introduction into the case may have been such as to make such warning seem imperative, in the interest of justice, or even to justify the granting of a motion for a mistrial where it appears that the insurance feature has been injected into the case in a deliberate attempt to create a prejudice in the minds of the jury. Where, however, it has appeared only incidentally in the case, many judges have felt it the part of wisdom to ignore it, since to warn the jury would only serve to call their attention to it and accentuate its importance. Here an inquiry of the jury as to whether any of them had read the article in question would have brought to their attention the very fact, knowledge of which by the jury would, as the defendant claimed, be prejudicial to his case, and a reference to the matter in the charge, which was not requested by the defendant, would have had the same effect. The court acted within the discretion with which it is invested in the conduct of a trial in the denial of these

motions, and in refraining from any reference to the article in its charge to the jury.

The defendant assigns as error the refusal of the trial court to find that the article in question was written with design to aid the plaintiff and influence the jury in his favor, that its publication was prejudicial to the defendant, and that the court fined the reporter who wrote it $100 for contempt of court. He annexed to his assignments of error a transcript of the record in contempt proceedings taken by the court, after the verdict was rendered, in the case of the reporter who wrote the article in question. The court refused to certify this transcript as a part of the record on the ground that it was neither a part of the case nor material to the determination of any of the issue therein. The defendant filed an additional assignment of error based upon this refusal, and filed in this court an application for an order directing the trial court to certify the record of the contempt proceedings. The record in the contempt proceedings is no part of the record of the trial of this case and the application is denied. If it were held otherwise, an inspection of the transcript of the contempt proceedings discloses that it contains no evidence which would require a correction in the finding.

There is no error.

In this opinion the other judges concurred.