WILLIAM A. KING ET AL. *v.* H. S. PALMER ET ALS.,
TRUSTEES OF THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued January 8—decided February 17, 1943.

*James W. Grady,* for the appellants (defendants.)

*Nathan G. Sachs,* for the appellee (named plaintiff).

ELLS, J. The plaintiff King brought this action to recover damages for personal injuries sustained by him by reason of the defendants' negligence in the operation of a truck in their enginehouse at Cedar Hill in New Haven. He was a steam fitter in the employ of the Foskett & Bishop Company, an independent contractor engaged in replacing and reconstructing the entire heating and steam pressure system of the enginehouse. An award of compensation by his employer was made to the plaintiff and he brought this tort action against the defendants under General Statutes, § 5231. The insurance carrier for the employer intervened as a coplaintiff. The defendants denied liability at law and claimed that they were the principal employers of King within the meaning of General Statutes, § 5230, with consequent liability for compensation and immunity from tort action. The trial court entered judgment for the plaintiff King for a substantial amount subject to the subrogation claim of the intervening plaintiff. The sole question upon this appeal concerns the court's decision that the defendants were not the principal employers of King at the time of his injury within the meaning of § 5230.

The factual situation as it appears from the finding, corrected in certain respects, may be summarized as follows: The enginehouse is used for the repair and servicing of locomotives used for the operation of the defendants' trains. Low pressure steam is used for heating the enginehouse and high pressure steam is used for servicing engines. The contract of the Foskett & Bishop Company was in writing and provided for the replacement of the entire heating and servicing system of the enginehouse. The existing system was

in disrepair and had not been replaced in its entirety for many years. The contractor ripped out four different lines of old pipes running around the enginehouse, namely, the low pressure and high pressure steam, the air and the water pipes, and replaced them with new pipes which rested upon metal hangers extended from the roof, all in accordance with specifications outlined in blue prints. The enginehouse is one of the largest on the New Haven Railroad system, and the contract was for a major job. The contractor furnished all materials, superintendence, labor, tools, equipment and transportation. The contract provided that the work would be done at the risk of the Foskett & Bishop Company, except damage or injury caused solely and directly by the negligence of the defendants' agents or employees, and that the contractor would comply with all state and federal workmen's compensation liability laws and at all times would carry and pay premiums on all policies of insurance required by such laws. The work of replacing the pipes was undertaken with the knowledge and understanding that the operation of the enginehouse would necessarily be continued at the same time. The defendants had in their employ at the enginehouse eighteen or nineteen steam fitters. Two were engaged in maintaining the steam and air pipes and in fixing leaks and they were continuously busy at this work. Sixteen or seventeen steam fitters were assigned to the maintenance of locomotives and were available at all times for that work. The defendants were not equipped to do the major job of reconstruction called for by the contract with Foskett & Bishop. The defendants had no control over the employees of the contractor, nor the right to hire or discharge them or give them any orders in respect to the work to be done. The preparation of some of the work and equipment was done on the

premises of the contractor and not on those of the defendants.

General Statutes, § 5230, provides that "When any principal employer shall procure any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done shall be a part or process in the trade or business of such principal employer, and shall be performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor." In order to come within the provisions of this statute, three things must be shown: (1) the relation of principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be on or about premises controlled by the principal employer; (3) the work must be a part or process in the trade or business of the principal employer. *Fox* v. *Fafnir Bearing Co.*, 107 Conn. 189, 191, 139 Atl. 778; *Crane* v. *Peach Bros.*, 106 Conn. 110, 113, 137 Atl. 15. The plaintiff concedes the existence of the relation of principal employers and contractor in work wholly or in part for the former. There can be little doubt but that the work was on or about premises controlled by the principal employers. The third requirement presents the principal issue, and the decision upon it is determinative of the case.

We have never attempted to define by a general statement the intent expressed by the legislature in its use of the words "part or process in the trade or business" of the principal employer and have in fact in our opinions on one or two occasions suggested that it would be difficult to do so. We have had, however, a number of cases where we have been called upon

to decide whether or not upon their particular facts they fall within the provisions of the statute, and they afford a valuable basis for arriving at a general conception of its application.

We are not concerned in a case such as the one before us with the words "part [of] . . . the trade or business." They were, it may be assumed, intended to meet situations, for example, where a manufacturer of a general line of hats contracts out the production and distribution of hats of a particular type or where a transportation company contracts out the maintenance and operation of one of its branches. We might conceivably have construed the words "process in the trade or business" as restricted to those situations where a part of the process which entered directly into the production of goods by a manufacturer or the performance of the business function of a commercial enterprise was contracted out, as, for example, where a manufacturer of optical goods contracted out the rough grinding of the lenses which went into the instruments it produced, itself doing the polishing and finishing of the lenses, or where a mercantile company contracted out the maintenance and operation of a system for delivery of its goods. The case of *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 122 Atl. 63, would, it is true, fall within this narrower view of the scope of the statute, for there the injured employee was engaged in loading loam upon a truck used in excavation work which a building and construction concern engaged in erecting a building had contracted out. We have regarded, however, the broad policy of the Workmen's Compensation Act; *Bellow* v. *Notkins*, 101 Conn. 34, 37, 124 Atl. 831; *Massolini* v. *Driscoll*, 114 Conn. 546, 553, 159 Atl. 480; and in effect have held that the words "process in the trade or business" included all those operations which en-

tered directly into the successful performance of the commercial function of the principal employer. In this class of cases fall the washing of the windows of a factory; *Fox* v. *Fafnir Bearing Co.*, 107 Conn. 189, 193, 139 Atl. 778; the placing of the calks in the shoes of horses by a driver engaged in collecting ashes for a city which had contracted out the performance of that function; *Massolini* v. *Driscoll*, supra; and the removal of rubbish in connection with the operation of a store; *Hoard* v. *Sears, Roebuck & Co., Inc.*, 122 Conn. 185, 189, 188 Atl. 269. On the other hand, where the work in which the employee is engaged does not directly enter into the performance of the commercial function of the claimed principal employer but only affords facilities for the conduct of his trade or business, we have held that the work is not a "process" in that trade or business. This is so as regards the construction of a factory building; *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, 114 Conn. 126, 136, 157 Atl. 860; and the construction of a partition in a factory; *Bown* v. *Waterbury Battery Co.*, 129 Conn. 44, 50, 26 Atl. (2d) 467. If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of its business, or as an essential part in the maintenance thereof, it is a part or process of his work.

It appears in the instant case that the defendants had two employees who were engaged in fixing leaks in the pipes and were continuously busy at that work. This was work that would ordinarily and appropriately be performed by the principal employers in the prosecution of their business and is essential to maintaining it. However, the work out of which the injury arose was a major job of replacement of pipes and not one of their temporary maintenance, so that

the principal employers' business might proceed without interruption. The trial court was correct in its judgment that the plaintiff was not engaged in part or process of the defendants' business.

There is no error.

In this opinion the other judges concurred.