PAULINE SPALLA v. ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NOS. 74548, 74539

JOSEPHINE BRAZIS v. ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT

Memorandum filed January 16, 1948.

*Curtis K. Thompson,* of New Haven, for the Plaintiff.

*William L. Hadden, by Harry Silverstone,* Assistant Attorney General, of Hartford, for the Defendant.

QUINLAN, J. These appeals were argued together. Appeals from the unemployment commission are to be treated like compensation appeals to the Superior Court. Practice Book § 265 A. Accordingly, the Superior Court cannot retry the facts. The conclusion must be tested by the subordinate facts. Unless there was an incorrect application of law to them or inferences have been unreasonably or illogically drawn, the conclusion must stand.

The finding is very complete. The vital question for determination is whether the receipt of a vacation fund check by the claimants from the union to which they belonged disqualified them to receive unemployment compensation benefits, under the provisions of General Statutes, Cum. Sup. 1939, § 1339e (b) (4) (A), to wit: " . . . (4) during any .week with respect to which the individual has received or is about to receive remuneration in the form of (A) . . . any payment by way of compensation for loss of wages . . . ."

Claimants were in the employ of a local contractor doing business for a jobber. The contractor was the employer and had full control over the hiring and firing, subject to local union regulations. The contractor was subject to the Connecticut Unemployment Compensation Act.

The statute is remedial in character and therefore to be liberally construed; *Robert C. Buell & Co.* v. *Danaher,* 127 Conn. 606, 612; and the question at issue involves a construction of the disqualifying provision of the act.

The defendant seeks a correction in the finding of facts where there was divergence in the testimony. The commissioners are the judges of credibility, and in view of the subordinate facts found and the conclusions reached, amply supported by the record, the changes sought are immaterial.

Are then the conclusions reached supported by the subordinate facts? It seems important to inquire into the real relationship of a specialized industry, as it exists among the producing parties. Beginning at the lowest level we have (1) the employee (of which the claimants were one); (2) the contractor who operates a shop in which the employee works; (3) the manufacturer or jobber, the difference between the two being that the jobber does not have an inside shop and, although he provides, cuts and designs all the material and decorations, the work is finished by a contractor.

From this simple device of operation there has been evolved organizations (1) of the workers and employees under the name of International Ladies Garment Workers Union; (2) of the manufacturers in a trade organization known as the Affiliated Dress Manufacturers, Inc., engaged in manufacture in New York City; (3) of contractors producing in Connecticut, who have organized a trade association known as the Connecticut Dress Manufacturers Association; and (4) of the contractors in a trade organization known as the United Better Dress Manufacturers Association.

Various collective agreements were entered into by and between various of the foregoing parties, and the basic agreements may be mentioned by reference to the finding in paragraphs 21, exhibit A, dated February 26, 1941; in paragraphs 22 and 27, exhibit B, dated February 14, 1941; and paragraph 22, the modification agreement of exhibit A as of March 6, 1944, and known as exhibit D, dated March 22, 1944, and, on the same date the agreement between the Affiliated and the International Ladies Garment Workers Union was also modified, exhibit C. Among the modifications was the provision for a health and vacation benefit fund, known as the health fund. It is specifically provided in paragraph "fourth" of both exhibits C and D that payments made from this fund "shall not constitute or be deemed wages due to their workers." In exhibit D, an agreement between the United Better Dress Manufacturers and the Union, the agreement made by the Affiliated and the Union is incorporated, as it concerns this fund, "in line with recent trends" to provide workers with contributions toward vacation benefits. Moreover, the recitals in all the agreements emphasize the gain to be had through cooperative effort. All the exhibits are made a part of the finding and have been carefully scrutinized. Exhibit E in the Spalla appeal and exhibit 5 in the Brazis appeal on page 19 show that as early as December 27, 1944, the amount of the vacation benefits were fixed for individual workers according to classification.

Whether it is accurate to call the payment a gratuity or bonus, the fact remains, under the rules of construction referred to at the outset, that it was not paid with respect to any particular week but at a time prior to a layoff, and it was not paid by the employer but was paid "in anticipation of promoting better relationship" among employer, employees, the union and the trade organizations interested, and expressed by the latter as not to "constitute or be deemed wages due their workers."

The subordinate facts support the result reached by the commissioners and the appeal is dismissed and judgment may enter for plaintiffs (claimants) to recover the benefits sought and the plaintiffs are not disqualified as receiving a payment in lieu of wages.