PETER JOHNSON *v.* ROBERTSON BLEACHERY & DYE WORKS, INC.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS AND O'SULLIVAN, JS.

Argued April 6—decided May 31, 1950.

*William J. Larkin* and *William J. Larkin, 2d,* for the appellant (defendant).

*William J. Secor, Jr.,* with whom was *Lawrence L. Lewis,* for the appellee (plaintiff).

BROWN, C. J.   The plaintiff sued to recover for personal injuries sustained in consequence of the defendant's alleged negligence while he was at work in the basement of its bleachery as a carpenter of the Foundation Company, which was under contract to construct a cement floor in the building.  The defendant's answer contained a denial, and special defenses of contributory negligence, assumption of risk, and no liability other than under the Workmen's Compensation Act.  The court rendered judgment for the plaintiff and the defendant has appealed.

These facts relevant to the issues posed by the defenses have been found by the court:  The defendant, which is engaged in the business of manufacturing, dyeing and bleaching cloth, in its plant in New Milford operates certain machinery in the bleaching process. On November 30, 1946, the plaintiff, who was employed as a carpenter by the Foundation Company, which we shall refer to as the company, was performing services in the defendant's building.  The company was under contract with the defendant to install a section of new cement floor ten feet wide and from seventy to eighty

feet long, comprising the center section of the main floor of the defendant's building. The job involved the removal of the old wooden flooring, the construction of forms into which the cement for the new floor was to be poured, the erection of posts in the basement to support the forms, and the installation of steel girders to sustain the new floor. The work on the forms was done by the plaintiff and other experienced carpenters. During the progress of this work, the defendant, which knew that the plaintiff was working in the basement, maintained in operation on the first floor, at a point adjacent to the new construction, one of its large bleaching machines in which water containing a caustic acid was used. When the machine was in operation, part of this caustic solution ran off through an outlet but some of it splashed onto the surrounding floor and dropped thence onto the forms and uprights and into the basement beneath. The defendant knew that this solution was likely to burn if it came in contact with the human body and was dangerous, and that it was being splashed by the machine onto the floor adjacent to the new construction work.

On November 30 the plaintiff in the course of his duties as an employee of the company was working in the basement installing supports for the forms. As he looked up to make sure that the supports were in proper place, some of the caustic solution that had splashed onto the floor from the machine dripped through one of the forms and into his left eye, causing serious injury. Although this happened several days after the plaintiff had started work in the basement, he at no time had become aware of the dangerous nature of the solution and had never been warned concerning it by either the defendant or the company. Nor had he knowledge of any facts which would charge him with knowledge of its dangerous characteristics.

The court inspected the defendant's premises. Upon these facts, which are not subject to correction, the court concluded that the plaintiff's injury was proximately caused by the negligence of the defendant in operating the bleaching machine and permitting the escape of the caustic solution, and in failing to use reasonable care to keep its premises in a reasonably safe condition for use by the plaintiff; and that no conduct of the plaintiff caused his injury and that he was not guilty of contributory negligence. It further concluded that the plaintiff did not appreciate or comprehend the risk of injury involved in working in the basement, that he could not have reasonably appreciated or realized that unless he took steps to protect himself he would be liable to injury, and that the plaintiff did not assume any risk of injury. These issues are primarily factual and no citation of authority is required to demonstrate that the defendant's assignments of error as to them are without merit.

The court's further findings which relate to the defendant's defense under the Workmen's Compensation Act, including the single correction to which the defendant is entitled, may be thus summarized: By a written contract of August 8, 1946, the company agreed to construct two buildings for the defendant in New Milford on a cost-plus basis. The contract provided that the company was to carry workmen's compensation coverage. The plaintiff was hired for this particular job by the company. He worked under the direction, control and supervision of its foreman and superintendent, who were on the defendant's premises while the work was in progress, and he was there paid by the company's paymaster. His wages so paid appeared among the items on the bills rendered by the company to the defendant and were included in the payment thereof by the latter. The company not only

hired and supervised the work of the plaintiff, paying him with its own drafts, but also had the right to discharge him and, further, paid his social security tax and made income tax withholdings from his wages. The company furnished all the necessary plans and specifications for the work as well as the requisite materials and equipment. The defendant neither supervised nor controlled the plaintiff in his work, nor attempted to do so.

On November 30 and for some time prior thereto, that is, during the course of the construction of the two buildings by the company for the defendant, the defendant was planning, also under the contract, to replace a wooden floor by installing the concrete floor referred to above. The defendant owned no cement mixer in 1946. The company used sixteen of its own employees to do this job, and they worked overtime to complete it within two weeks. In 1945, another contractor, the Bishop Company, installed concrete flooring in ten to twelve bays of the defendant's plant. Each of these was approximately ten feet wide and sixteen feet long. While the defendant usually employed a maintenance crew of between thirty and forty men for the purpose of making ordinary repairs, the work of installing the new cement floor, as performed by the company, was not ordinary maintenance and repair but a major and capital improvement to the defendant's plant. During 1945 and 1946, construction work of major proportions, as opposed to ordinary repair, in the installation of new flooring in the defendant's plant was not done by its maintenance crew, which did not customarily do such work in the daily routine of its duties in the factory. The work on which the plaintiff was engaged when injured was not of such a character that it ordinarily would be performed by the defendant's own employees in the prosecution of its

business or as an essential part thereof. The defendant at no time had the right of supervision or control over the plaintiff's work.

Upon the foregoing facts, the court concluded: (1) The plaintiff was an employee of the company and not of the defendant; (2) the fact that the agreement between the two corporations was a cost-plus contract did not make him an employee of the defendant; (3) the work on which the plaintiff was engaged for the company was not a part or process in the trade or business of the defendant; (4) the plaintiff is not precluded by the Workmen's Compensation Act from recovering damages at law against the defendant. The defendant has assigned error in each of these conclusions. The facts recited above, which establish that the company had the general authority to direct what should be done and when and how it should be done, that is, the right of general control over the work, particularly when considered in connection with the other corroborating facts, make clear that the court's first conclusion was correct. *Jack and Jill, Inc.* v. *Tone,* 126 Conn. 114, 119, 9 A. 2d 497; *Robert C. Buell & Co.* v. *Danaher,* 127 Conn. 606, 611, 18 A. 2d 697. The fact that the contract required the defendant to pay the company on a cost-plus basis was relevant but did not require a conclusion, as a matter of law, that the company was not an independent contractor, and that therefore the plaintiff was a direct employee of the defendant. *Morgan* v. *Smith,* 159 Mass. 570, 573, 35 N. E. 101; *Hale* v. *Johnson,* 80 Ill. 185, 186; *Underwood Contracting Corporation* v. *Davies,* 287 F. 776, 780; *Kruse* v. *Revelson,* 115 Ohio St. 594, 596, 155 N. E. 137; note, 55 A. L. R. 291. The court did not err in the second conclusion.

Under § 7423 of the General Statutes, when a principal employer procures work to be done for him by a

contractor and this work is "a part or process in the trade or business of such principal employer" and is "performed in, on or about premises under his control," he is liable to pay all compensation under the Workmen's Compensation Act just as if there were no intervening contractor. Whether the statute is applicable in this case depends upon whether the construction of the concrete floor by the company was "a part or process in the trade or business" of the defendant. *King* v. *Palmer*, 129 Conn. 636, 639, 30 A. 2d 549. The burden of proof upon this issue rested upon the defendant. As we pointed out in the *King* case, it would be difficult to define the meaning of the words quoted by a general statement, but our decisions have indicated certain facts which are significant in determining whether they do apply to a given situation. These facts found by the court fall within the category: The construction of the floor was in the nature of a major replacement or reconstruction rather than ordinary repair work and was not a part of the defendant's manufacturing process; the company was obligated to furnish all the plans, specifications, materials, superintendence, labor, tools and equipment; it was further obligated to carry workmen's compensation coverage; the defendant had no control over the company's employees and had no power to give orders in respect to how and when the work should be done; and the work was not of such a character that ordinarily it would be performed by the regular employees of the defendant. As we have said, "the question whether an owner is within the designation of the statute is to be regarded as largely one of degree and of fact." *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, 114 Conn. 126, 136, 157 A. 860; *Fox* v. *Fafnir Bearing Co.*, 107 Conn. 189, 194, 139 A. 778; see *Crisanti* v. *Cremo Brewing Co.*, 136 Conn. 529, 532, 72 A. 2d 655. Applying this principle, we conclude that

the principal material facts just recited warranted the court's conclusion that the construction of the floor was not a part or process in the trade or business of the defendant. That the work of substituting a cement for the pre-existing wooden floor constituted reconstruction does not require a contrary conclusion. *Bown* v. *Waterbury Battery Co.*, 129 Conn. 44, 50, 26 A. 2d 467. It further follows from what we have said that the court's fourth conclusion was also correct.

There is no error.

In this opinion the other judges concurred.