LILLIAN S. HORTON *v.* J. LEONARD VICKERS

LILLIAN S. HORTON ET AL. *v.* J. LEONARD VICKERS

SUPERIOR COURT FAIRFIELD COUNTY FILE NOS. 74450, 74455

Memorandum filed March 27, 1952.

*Cressy, Bartram, Melvin & Sherwood,* of Stamford, for the Plaintiffs.

*Day, Berry & Howard,* of Hartford, for the Defendant.

CULLINAN, J. In consequence of a fall in her Greenwich home on June 11, 1946, Mrs. Horton sustained an intracapsular fracture of the left femur (broken hip). Dr. Vickers, an orthopedic surgeon of Greenwich, was retained in a professional capacity, and this action seeks substantial damages flowing from his claimed malpractice in treating Mrs. Horton.

At the date of her accident, Mrs. Horton, then eighty years old, was an active, alert, energetic lady

who belied her years and who was industrious and vigorous in executing household chores and social responsibilities. It is unquestioned that her fracture and its repair produced a disastrous physical result in that Mrs. Horton has become a permanent cripple confined largely to a wheel chair. The problem is to attempt to assess responsibility for this ill-fated conclusion.

On the day following her injury, Mrs. Horton was removed to the Greenwich Hospital and committed to the professional direction of Dr. Vickers. An x-ray taken on hospital admission revealed that the injury was an impacted fracture with the bone ends pressed together in excellent alignment and position. Two days later, the defendant undertook to perform surgery, intending to insert in the hip a Smith-Peterson nail designed to nail the bone ends together as one would nail two boards, thereby immobilizing them. The first insertion of the nail was too high to transfix the fragments; it was therefore withdrawn and reinserted. An x-ray was taken during the course of the operation, showing the nail, in its second insertion, to be in good position with about one-half inch protruding from the cortex. Thereafter the nail was driven further until flush with the cortex, a determination made by Dr. Vickers through digital examination.

On the sixth post-operative day, Mrs. Horton developed a serious and critical bladder infection which brought her to the point of death, and which resulted in a restriction of the flow of urine as well as a retention of urine. Tidal drainage was instituted under the supervision of a competent urologist and when Mrs. Horton's condition worsened she was made to walk in an attempt to arrest the perilous bladder infection. This treatment was a calculated risk. Both Dr. Vickers and Dr. Washburn, the urologist, recognized that walking imperiled the fracture

site but the alternative of confining the patient to bed imperiled her life. Ultimately, through walking and through exercise of the perineal muscles, drainage of Mrs. Horton's bladder was accelerated and the contents of her bladder were expelled. To be sure the fracture site did not heal, which fact was noted by Dr. Vickers over his signature on the patient's discharge on August 8.

In support of her allegations of malpractice, Mrs. Horton produced as her only expert witness Dr. Charles W. Banks, formerly of New Rochelle, New York, a surgeon specializing in traumatic and orthopedic surgery. Among other questions Dr. Banks was asked: "Q. Now, then, are you presently and were you in 1946, familiar with the proper and approved practice at the Greenwich Hospital right here in Greenwich, Connecticut? A. I have had patients in the Greenwich Hospital and my wife was operated there by Dr. McCreary since 1946. Q. So is the answer to my question yes? A. I did say yes."

In malpractice actions it is fundamental that the claimant has the burden of proving that the doctor failed to exercise that degree of care, skill and diligence ordinarily had and exercised by physicians and surgeons engaged in the same line of practice in the general neighborhood or area under consideration. *Geraty* v. *Kaufman,* 115 Conn. 563, 572. The duty of a physician can be established by expert evidence as to the practice of surgeons in the community in like cases, by which the basis would be laid for a finding of neglect by a surgeon who has not conformed to the general practice. *Slimak* v. *Foster,* 106 Conn. 366, 368.

The expert testimony of Dr. Banks did not establish a cause of action under the foregoing Connecticut rules. The bulk of his testimony concerned his personal procedures or the procedures prescribed at

Bellevue Hospital in New York. On no occasion was he asked the vital essential question, namely: Did Dr. Vickers, in doing what he did for Mrs. Horton, exercise that degree of care, skill and diligence ordinarily had and exercised by surgeons in the same general neighborhood and in the same line of practice?

At several points in his testimony, Dr. Banks considered certain procedures of Dr. Vickers as having been "bad practice." It is impossible to determine from the use of that phrase whether he meant "bad practice" as measured by Dr. Banks' subjective standards or by Bellevue Hospital standards, or by indefinite and unfixed standards of orthopedic surgery. Dr. Banks testified he had had patients in Greenwich Hospital—in fact, that his wife had been a patient there—but at that point the matter ended. Nowhere was he asked nor did he testify that the conduct of Dr. Vickers was contrary to the standards of skill and care exercised by surgeons situated as was Dr. Vickers, having in mind the locality and the type of practice in which the defendant was engaged.

Having considered the entire record with extreme care, I am satisfied that the medical problems attendant upon Mrs. Horton's recovery were numerous and complex. Had she been permitted to remain in bed the probabilities favored her immediate death. Permitting her to be up and about and to walk created the distinct probability of nonunion of the fracture. Mrs. Horton's chances of recovery were weighed and evaluated and the ultimate determination made in favor of saving her life at the measured risk of a permanently disabled leg. I am unwilling to say that such a determination constituted malpractice within the case law of Connecticut.

Accordingly, judgment may enter for the defendant in each action.