DOMINIC GIGLIOTTI ET AL. *v.* THE UNITED ILLUMINATING COMPANY

THOMAS BRAY ET AL. *v.* THE UNITED ILLUMINATING COMPANY

KING, MURPHY, SHEA, ALCORN and COMLEY, JS.

Argued June 5—decided July 11, 1963

*Milton H. Belinkie,* with whom were *Joseph G. Shapiro* and *John H. Welch, Jr.,* for the appellant (defendant) in each case.

*Bernard S. Peck,* with whom were *Arnold J. Bai, Elaine S. Crehore,* and, on the brief, *David Goldstein,* for the appellee (named plaintiff in the second case); with him also was *Max Frauwirth,* for the appellee (named plaintiff in the first case).

KING, J. The named plaintiffs in these two cases, which were tried together, were electricians in the employ of the M. B. Foster Electric Company, hereinafter referred to as Foster. Foster was one of several independent contractors having contracts with the defendant to perform different phases of the defendant's project of constructing, in Bridgeport, a new substation for the distribution of electricity, to be known as the Pequonnock substation. The defendant is a public utility engaged in the business of generating electricity and transmitting and selling it to the public.

At the time of their injuries, on January 3, 1957, the named plaintiffs, hereinafter referred to as the plaintiffs, were dusting and cleaning a cubicle of the partially completed substation in order to get it ready to be put into service. A cubicle, which houses a circuit breaker, is a component of a completed substation. This work should not have been attempted if the cubicle was energized. In fact, the cubicle was energized and in consequence the plaintiffs received very severe electrical burns. There was abundant evidence from which the jury could conclude that the defendant was negligent in not de-energizing the cubicle and in not warning the plaintiffs, who were working together in it, that it had not been de-energized, and that this negligence constituted a proximate cause of the plaintiffs' injuries.

The defendant's assignments of error are principally directed to the charge and to certain rulings on evidence. We first take up the assignments relating to the charge. One of them, so far as it has been pursued in the defendant's brief, is largely concerned with the third special defense, on which the defendant lays great stress. The defense alleged, in substance, that the plaintiffs' only remedy, if any, was under the Workmen's Compensation Act. This defense was a wholly statutory one, based on General Statutes § 31-154, included in chapter 566, the Workmen's Compensation Act.[1] As such, it fell within the rule of Practice Book § 153. *Capone*

---

[1] "Sec. 31-154 [now § 31-291]. PRINCIPAL EMPLOYER, CONTRACTOR AND SUBCONTRACTOR. When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compen-

v. *Sloan,* 149 Conn. 538, 541, 182 A.2d 414; *Domenick* v. *Wilbert Burial Vault Co.,* 149 Conn. 381, 385, 180 A.2d 290; *Lowell* v. *Daly,* 148 Conn. 266, 270, 169 A.2d 888.

Where the employee of an independent contractor is injured as a result of the negligence of the contractee, the contractee is not liable to a suit at common law if the employee has a remedy against the contractee under the section of the Workmen's Compensation Act quoted in the footnote. *Crisanti* v. *Cremo Brewing Co.,* 136 Conn. 529, 531, 72 A.2d 655; *Farrell* v. *L. G. DeFelice & Son, Inc.,* 132 Conn. 81, 89, 42 A.2d 697, and cases cited.

The three conditions which must coexist if the work of the plaintiffs is to come within the terms of the statute, so as to render the special defense efficacious, have been well summarized as follows: "(1) the relation of principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be on or about premises controlled by the principal employer; [and] (3) the work must be a part or process in the trade or business of the principal employer." *Battistelli* v. *Connohio, Inc.,* 138 Conn. 646, 649, 88 A.2d 372. Of the three conditions enumerated, the existence of the first two was open to no real dispute, and the court in effect properly so instructed the jury.

Thus, there was left for consideration only the question whether, within the meaning of the statute, the work was a part or process in the trade or busi-

sation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor."

Chapter 566 was repealed by Public Acts 1961, No. 491, § 82, and immediately reenacted as chapter 568, with some changes, by No. 491 of the 1961 Public Acts. Section 31-154, with which we are concerned in this appeal, although reenacted without change, was renumbered as § 31-291.

ness of the defendant. It is clear that the construction of a new substation, a project in which some fifteen independent contractors were from time to time engaged, is not, nor was it claimed to be, an undertaking of a character which ". . . ordinarily or appropriately would be performed by the . . . [defendant's] own employees in the prosecution of . . . [its] business, or as an essential part in the maintenance thereof . . . ." Ibid.; *Grenier* v. *Grenier*, 138 Conn. 569, 571, 87 A.2d 148. Rarely could the construction of a new plant be found to be an undertaking falling within the terms of the statute as a part or process of the trade or business in the prosecution of which the plant was intended, upon completion, to be used. *Grenier* v. *Grenier*, supra (questioning the application of the statute made in the case of *Bello* v. *Notkins*, 101 Conn. 34, 37, 124 A. 831).

The question is whether work such as the plaintiffs were doing, at the time when they were doing it in furtherance of Foster's contract obligations, was of a character which would appropriately be performed by the defendant's own employees. The defendant, in this connection, makes a claim which is ingenious rather than persuasive. This claim seems to be that since the plaintiffs were engaged at the moment of injury in the work of dusting and cleaning, which would normally be done by the defendant's own employees as a matter of routine maintenance, the work constituted a part or process in the defendant's trade or business within the meaning of the statute. The main flaw in this reasoning is that the plaintiffs were dusting and cleaning the cubicle, not in the routine maintenance of a substation in commercial operation, but as a step in furtherance of the performance of Foster's con-

tract obligation to install the electrical equipment required in the new substation. See cases such as *Grenier* v. *Grenier,* supra; *King* v. *Palmer,* 129 Conn. 636, 640, 30 A.2d 549; *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 136, 157 A. 860. The evidence that the dusting and cleaning were routine maintenance, if indeed there was any, was slight indeed. In its charge, however, the court left the issue to the jury as a question of fact, and of this method of treatment the defendant has no ground for complaint. The court gave the applicable test on the meaning of § 31-154, as outlined in our cases, and especially in *Grenier* v. *Grenier,* supra, and explained that if the work was of such a character that it would be a part or process in the work of the defendant under that test, the defendant would have sustained its burden of proof on its third special defense. After some period of deliberation, the jury asked to have the explanation of the test repeated. They did not ask to have it amplified or clarified. Far from indicating confusion on the part of the jury, as the defendant intimates in its brief, the request indicated a conscientious effort on the part of the jury to cope with perhaps the most important factual question in the case as it had been submitted to them. Pursuant to the jury's request, the court repeated that portion of the charge. It also added certain quotations from opinions of this court further explaining the distinction between a part or process in the trade or business of the defendant and the performance of work not ordinarily incident to the carrying on of its business. The charge as a whole was neither inadequate nor prejudicial to the defendant.

The defendant filed a request to charge to the effect that the jury must not speculate or guess as

to damages and that, under no circumstances, could sympathy and compassion, or the fact that the defendant is a public utility, be allowed to affect their consideration of the law or the evidence. The charge would have been improved had the request been adopted. But the charge as given in effect carried out the terms of the request except that it stated that damages must never be based on "sympathy alone." The addition of the word "alone" was obviously an inadvertence and was wholly inconsistent with all the rest of the charge. It would be unreasonable to believe that this word could have adversely influenced the jury. Moreover, the situation was a typical one for the use of an exception to call the court's attention to an obvious inadvertence. The time has long since passed when a party can sit silent at the close of a charge and, if the verdict proves unpalatable, thereafter for the first time raise claims of error based on obvious inadvertencies in the charge. Practice Book § 153.

The defendant also claims error in two rulings on evidence. The first arises from the plaintiffs' offer of the contract between Foster and the defendant. The defendant claimed that certain provisions requiring Foster to carry workmen's compensation insurance, to carry liability insurance for injuries which might arise from the operations under the contract, the limits of which were stated, and to indemnify the defendant against any loss or damage resulting from actions instituted against it as a result of any act or omission of Foster in carrying out the contract, should be deleted from the contract before its admission in evidence. The plaintiffs claimed that the entire contract, including these provisions, was relevant to overcome the defendant's third special defense, namely, that the de-

fendant's liability, if any, was restricted to the liability imposed under the Workmen's Compensation Act and that it had no common-law liability to the plaintiffs. It is difficult to see, especially in view of the verdicts, how the evidence as to the workmen's compensation insurance could have harmed the defendant. It may be that the evidence as to the liability insurance and the indemnity provisions was remote, in the sense that its probative value was so slight that the court would not have improperly exercised its discretion had it excluded it. *State* v. *Sebastian,* 81 Conn. 1, 4, 69 A. 1054. We cannot say, however, that the evidence was, on the particular facts here, irrelevant, or that the court so abused its discretion in admitting the contract as to constitute reversible error. *Papa* v. *Youngstrom,* 146 Conn. 37, 40, 147 A.2d 494; *Locke* v. *Kraut,* 85 Conn. 486, 489, 83 A. 626; *State* v. *Sebastian,* supra; *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 A. 998; see *King* v. *Palmer,* 129 Conn. 636, 638, 30 A.2d 549; *Johnson* v. *Robertson Bleachery & Dye Works, Inc.,* 136 Conn. 698, 701, 704, 74 A.2d 196. Of course, the fact that the contract contained references to insurance could not operate to exclude those portions if they were otherwise admissible and of probative value. *Guarnaccia* v. *Wiecenski,* 130 Conn. 20, 25, 31 A.2d 464; *Muraszki* v. *William L. Clifford, Inc.,* 129 Conn. 123, 125, 128, 26 A.2d 578. A collection of cases on this point may be found in 4 A.L.R.2d 761, 775, 776.

In admitting the contract, the court indicated that it intended, in its charge, to caution the jury that they should not be prejudiced or influenced by any knowledge that there was insurance coverage in the case. In fact, the court failed to include such an instruction in its charge. Whether such an in-

struction would or would not have been helpful to the defendant is problematical, since it might have emphasized the fact of the insurance. *Geraty* v. *Kaufman,* 115 Conn. 563, 576, 162 A. 33. The defendant, however, was entitled to such an instruction if it wished it. *Antel* v. *Poli,* 100 Conn. 64, 75, 123 A. 272. In view of the court's statement as to its intention so to charge, the defendant could not fairly be required to file a formal request for such a charge. When it became clear, however, at the completion of the charge, that the court had overlooked the incorporation of such an instruction in it, it became the duty of the defendant to apprise the court of its oversight by a timely exception. Instead, the defendant remained silent, although taking a number of exceptions to other portions of the charge, apparently then believing that the court's omission was going to operate to its advantage. Only after the adverse verdicts had been returned and any possible opportunity for correction of the charge had been lost, did it seize upon the omission and claim error. It can take no benefit from this gambling on the outcome. See cases such as *Hemingway* v. *Cozzolino,* 117 Conn. 689, 690, 169 A. 621 (applying what is now recognized as the general rule; note, 88 A.L.R.2d 12, 35 § 6[b]). It is hardly necessary to note that there is no basis for the claim that the matter of insurance coverage was deliberately injected into the case for prejudicial purposes, so as to require punitive, disciplinary action, such as the granting of a mistrial, under the rule of cases such as *Geraty* v. *Kaufman,* supra.

The defendant offered in evidence, as past recollection recorded, a written statement which had been signed by Raymond F. Goldsmith, an employee

of Foster, about six weeks after the events recorded in it had taken place. The court excluded it on several independent grounds, one of which was that it was not made at or about the time of the events recorded in it. The court was fully justified in excluding the statement on this ground. *Neff* v. *Neff,* 96 Conn. 273, 278, 114 A. 126 (followed in *Papas* v. *Aetna Ins. Co.,* 111 Conn. 415, 420, 150 A. 310, and in *Capone* v. *Sloan,* 149 Conn. 538, 543, 182 A.2d 414).

The claim that the defendant as matter of law sustained its burden of proving its special defenses of assumption of risk and contributory negligence is so obviously without merit as to require no discussion.

Although the verdict in the Bray case was a very large one, the injuries were severe, permanent and, to a considerable degree, not the subject of dispute. There was evidence of large special damages and of extreme and long-enduring pain and suffering. The court, in its memorandum of decision, carefully analyzed the verdict in the Bray case, and its conclusion that the verdict was not excessive cannot be found an abuse of its discretion. *Pischitto* v. *Waldron,* 147 Conn. 171, 174, 158 A.2d 168.

The verdict in the Gigliotti case was in a relatively moderate amount, considering the injuries, pain and suffering and special damages which the jury could reasonably have found.

There is no error in either case.

In this opinion the other judges concurred.