JAMES CAPONE *v.* BLANCHE K. SLOAN ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 3—decided May 29, 1962

*Vincent Villano,* for the appellant (plaintiff).

*Harold M. Mulvey,* for the appellees (defendants).

KING, J. In many respects, the claims of proof of the parties are in substantial accord. Brubaker Road, in Cheshire, runs generally north and south, and intersects from the north, but does not cross, South Brooksvale Road, which runs generally east and west. The highways are uncurbed, and to some extent each flares at the intersection. The paved portion of Brubaker Road is of a uniform width of about twenty-five feet before it flares out, and that of South Brooksvale Road, about seventeen and one-half feet. Brubaker Road flares out much more than does South Brooksvale Road. The intersection is in the general form of an inverted "T."

At about 4:30 o'clock on the afternoon of August 23, 1957, a dry, clear day, the plaintiff was operating, in an easterly direction on South Brooksvale Road, a rack-body Dodge truck of three-quarters of a ton capacity and an overall width of eight feet. He was approaching, downgrade, the intersection with Brubaker Road. The defendant Blanche Sloan was driving a Plymouth sedan, owned by her husband, the defendant Paul Sloan, in a southerly

direction on Brubaker Road. The sedan was about six feet wide. She intended to make a right turn to proceed westerly along South Brooksvale Road. A stop sign on the west side of Brubaker Road controlled traffic proceeding southerly into the intersection. At the stop sign, a bank obscures the view to the west up South Brooksvale Road.

There is some conflict in the claims of the parties as to further facts. The plaintiff's claims of proof were that the Plymouth continued in motion until the accident and that Blanche made too wide a right turn, bringing the left side of her car over the center line of South Brooksvale Road and forcing the plaintiff suddenly to swing his truck to the right in an attempt to avoid hitting the Plymouth. The truck went up a bank and tipped over on its left side. The defendants' claims of proof were that after stopping at the stop sign Blanche inched her car forward until she could see to her left, or east, along South Brooksvale Road, and then again inched her car forward until she could see to the right, or west, along that highway; that she then saw the plaintiff's truck coming easterly, downhill, at 35 to 40 miles an hour, on the north (its left) side of South Brooksvale Road about 150 feet away; that she immediately stopped her car; that it remained stopped until after the accident; and that less than one-half of her car had passed the northerly edge of South Brooksvale Road extended across Brubaker Road. Both parties claim that at that time the Plymouth was turned slightly westward, at an angle of about forty-five degrees. The defendants claim that no part of the Plymouth had passed to the south of the center line of South Brooksvale Road, but the plaintiff claims that after the accident the Plymouth was partially south of

that line. If the truck hit the car, the impact was slight.

The changes sought in the finding are not material in our view of this case. An attack on a finding of an adversary's claims of proof in a jury case is often, if not generally, unwarranted, and it was unwarranted here. *Franks* v. *Lockwood,* 146 Conn. 273, 275, 150 A.2d 215.

The plaintiff, who is the appellant, assigns error in the failure of the court to incorporate in the charge certain requested instructions. One such instruction was that "[n]o person shall move a vehicle which is stopped, standing or parked unless such movement can be made with reasonable safety," and was based on § 14-243 of the General Statutes. The plaintiff, in a request to charge based on this statute, was required to employ greater specificity than a mere paraphrase of certain portions of the statute without a hint of their claimed applicability to, or operative effect on, the case. Practice Book § 153; *Lowell* v. *Daly,* 148 Conn. 266, 269, 169 A.2d 888.

Another requested instruction, citing *Mathis* v. *Bedula,* 122 Conn. 202, 206, 188 A. 264, as support, was that a mathematical formula is not controlling in the determination of the area of an intersection, but regard must be had for the courses which traffic passing in various directions may be expected to take. There was nothing in the claims of proof of either party which suggested any reason why the plaintiff should so operate his truck that any part of it remained north of the center line of South Brooksvale Road or why the defendant Blanche should so make her right turn as to bring any part of her car south of that center line. While the claims of proof included one that Brubaker Road

flared out several feet at the intersection, the crucial question was not the area of the intersection but the position of the two cars with respect to the center line of South Brooksvale Road. The court charged that the term "intersection" means the space common to "the traveled portions, not including clearly defined shoulders, of the two intersecting highways." This definition was not inaccurate, and although the charge would have been improved had the requested instruction been given with some further information as to the location of the center lines and shoulders of the highways within the intersection, the instruction requested, without amplification, would have been too general to do otherwise than confuse the jury. *Decker* v. *Roberts,* 126 Conn. 478, 481, 12 A.2d 541. The court did charge that the width of South Brooksvale Road was nineteen feet at the intersection and that its center line would be one-half of that distance from each shoulder. No claim is made that the width used by the court was inaccurate. The jury therefore had the information they needed for the location of the center line. The *Mathis* case was factually unusual and almost sui generis. The rule for ascertaining the location of the center lines, and for determining the area of the intersection, in situations involving uncurbed flaring highways is given in *Decker* v. *Roberts,* supra, 483. A requested instruction along the lines contemplated by the plaintiff should have followed the rule as given in the *Decker* case.

The plaintiff requested a charge as to circumstantial evidence in the drawing of inferences from physical facts, and that an inference might be drawn as to the nature of the collision, as bearing on the issue of negligence, from the evidence concerning

the damage to the vehicles. The court gave the customary rule as to circumstantial evidence. Further on, the court specifically applied the rule to inferences as to the courses and positions of the cars as indicated by the claimed damage to the Plymouth. See *LeBlanc* v. *Grillo,* 129 Conn. 378, 379, 28 A.2d 127. The plaintiff has shown no harmful error in the court's treatment of the subject of inferences. See *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742.

The defendants offered in evidence, during their cross-examination of the investigating officer, a freehand sketch or map of the locus of the accident which the officer had drawn. The plaintiff objected to the admission of this sketch on the ground that admittedly it was neither drawn to scale nor wholly free from inaccuracies. In the discretion of the court, the sketch, which was illustrative of the officer's testimony, was admissible even though it was not drawn to scale and was not entirely accurate in its portrayal of the locus. *Hall* v. *Sera,* 112 Conn. 291, 295, 152 A. 148. Upon its admission, the court cautioned the jury as to the more important inaccuracies in its representations. The sketch included certain measurements which the witness stated were correct when he made them, although he now had no independent recollection of them. Insofar as these measurements were concerned, a proper foundation was laid for their admission, as part of the exhibit, as past recollection recorded, under our rule in cases such as *Neff* v. *Neff,* 96 Conn. 273, 278, 114 A. 126; and *Papas* v. *Aetna Ins. Co.,* 111 Conn. 415, 420, 150 A. 310. The ruling admitting the sketch was correct.

There remain certain claims based on exceptions to the charge dealing with two exhibits in evidence.

The two exhibits were substantially identical maps of the locus, each drawn to the same scale. Since each map had been admitted as a full exhibit, they were both, under Connecticut practice, sent to the jury room for use by the jury during their deliberations. See *State* v. *Harris,* 147 Conn. 589, 598, 164 A.2d 399; 6 Wigmore, Evidence (3d Ed.) § 1913; 53 Am. Jur. 661 § 924, 662 § 926, 664 § 932. The portion of the charge objected to by the plaintiff concerned the making of measurements on the maps, with a ruler in the possession of one of the jurors, in order to locate on the maps the probable point of impact. The objections to the charge, liberally interpreted, were twofold. The first was that the jury should not have been allowed to make measurements with a ruler at all. The second was that the ruler which the charge contemplated would be used might not have been properly calibrated. The failure of the plaintiff's counsel to avail himself of an offer by the court to permit inspection of the ruler disposes of any possible merit in this second claim.

Counsel cited no case, nor has our own research disclosed any, involving the propriety of allowing a jury to use a ruler in determining distances from a map drawn to scale, when the map has been admitted as an exhibit. Where, as here, counsel are given an opportunity to inspect the ruler to determine its accuracy and calibration, and there is nothing to indicate that in these attributes or otherwise the ruler is unreliable, the jury may be allowed to use the ruler, in the sound discretion of the court. Here, there is nothing to indicate that in any respect the court's discretion was abused. Each map had a note that its scale was one inch for each ten feet. No claim was made that either

of the maps was not accurately drawn. Had the draftsman placed on each map a legend or scale in the form of a line indicating inches and the distance represented by each inch, the jury, with a piece of paper or string, could have scaled the map even without a ruler. Only the absence of such a scale made a ruler necessary. There was no acquisition of information, not produced in court, by an experiment conducted by the jury in the jury room on their own initiative and out of the presence of the court and the parties. See note, 80 A.L.R. 108; 53 Am. Jur. 663, § 927. Some of the benefit of having the map drawn to scale would be lost if the jury had no way, other than by visual estimate, of translating the representations on the map into distances on the ground. There was no error in the court's ruling.

The other assignments of error either were not properly raised or do not merit discussion.

There is no error.

In this opinion the other judges concurred.