******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., concurring. I concur in the judgment of the majority affirming the judgment of the Appellate Court, and I join in parts I A and II of the majority opinion. With respect to part I B, I agree with the majority that the trial court has discretion, pursuant to its inherent authority to manage the trial process, to determine how and where the jury shall study an exhibit during its deliberations. I write separately, however, because I disagree with the majority's conclusion that the trial court properly exercised its discretion in this case when it determined that the jury would have to review an exhibit of a digital video recording (video) in open court because there was no equipment in the jury room for reviewing such videos. Instead, I would conclude that the trial court abused its discretion because the record reveals that the trial court did not make any effort to determine if the proper equipment could be secured in order for the jury to review the video in private. Nevertheless, I would conclude that the trial court's error was harmless and, therefore, that the Appellate Court's judgment should stand. Accordingly, I concur in the judgment.

The majority concludes that the trial court properly exercised its discretion in this case because the request by the defendant, William T. Jones, to have suitable equipment made available to the jury, and the lack of basic trial technology in the courthouse "to play the video in the jury room left the trial court with little choice but to require the jury to view the video in open court." Notwithstanding the fact that the video was introduced as an exhibit by the state at trial,[1] the majority faults the defendant for not procuring any equipment to facilitate the jury's review of the video in the jury room, as the state's laptop computer used to play the video during trial could not properly be sent into the jury room because it contained information not admitted into evidence. Therefore, the majority posits that the trial court was under no obligation to delay deliberations while the court or the parties secured equipment needed to play the video in the jury room. Unlike the majority, I believe that despite the timing of the defendant's request, the trial court abused its discretion because the trial court did not make *any* effort to find a way for the jury to review the video in the jury room other than asking the state if its laptop was clean.[2] The trial court could have asked its clerk to undertake a basic inquiry as to whether the proper equipment to play the video was available somewhere else in the courthouse, or whether it could be readily secured by court operations staff members. Alternatively, the trial court could have asked whether either party had the ability to find alternative equipment and to provide it within a reasonable period of time.[3] It did not pursue

any of these options. Instead, the trial court simply stated that it did not "have anything to send into them for them to play the video," and asked whether the state's laptop was clean. Therefore, the majority's assertion that the trial court was left with "little choice" but to require the jury to review the video in open court is not predicated upon any facts in the record. See *United States* v. *Saunders*, 553 F.3d 81, 87 (1st Cir.) (holding trial court did not commit error in proposing that jury review audio and video exhibits in courtroom when technical difficulties arose with prosecutor's clean laptop because "the judge worked diligently to cause the requested materials to be provided to the jury," and "moved expeditiously" when problem arose), cert. denied, 558 U.S. 864, 130 S. Ct. 170, 175 L. Ed. 2d 108 (2009); *United States* v. *Rose*, 522 F.3d 710, 715 (6th Cir.) (approving of trial court's decision to convert digital recording to compact disc format so jury could listen to admitted evidence in privacy of jury room), cert. denied, 555 U.S. 890, 129 S. Ct. 194, 172 L. Ed. 2d 155 (2008). Like the majority, I recognize that it may not be feasible for a jury to review some types of exhibits in the privacy of the jury room, such as toxic substances or unusually large exhibits, or even video or audio tapes where they contain other material that has been excluded as part of the relevant evidence. The concerns, however, associated with such exhibits, namely, that due to their very nature or content they cannot fit or be safely utilized in the jury room, were not present in this case. Accordingly, I would conclude that the trial court abused its discretion in making its determination without undertaking any effort to make suitable arrangements to allow the jury to review and discuss the video in the privacy of the jury room.

Furthermore, although I hereinafter conclude that the trial court's error was harmless, I agree with the defendant's observation that requiring the jury to review a recorded exhibit such as the one in the present case in open court could impede the jury deliberation process, as jurors would be hindered in closely examining and contemporaneously discussing the evidence among themselves due to the presence of the judge, counsel, members of the public audience, and the defendant. See *State* v. *West*, 274 Conn. 605, 650, 877 A.2d 787 ("the primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence" [internal quotation marks omitted]), cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); *Clark* v. *Whitaker*, 18 Conn. 543, 549 (1847) (courts "must repel every foreign influence, which may affect the minds of the jury"); see also *Johnson* v. *Duckworth*, 650 F.2d 122, 125 (7th Cir.) ("jury privacy is not a constitutional end in itself; it is, rather, a means of ensuring the integrity of the jury trial"), cert. denied, 454 U.S. 867, 102 S. Ct. 332, 70 L. Ed. 2d 169 (1981). I believe that requiring the jury to review

the video that was admitted into evidence in the present case in open court and then return to the jury room to deliberate is more than "perhaps a little more burdensome," as the majority asserts. The jury's ability to review evidence and contemporaneously discuss it, rewind it, pause it or otherwise scrutinize it is an invaluable part of our judicial process and should not be understated. The jury certainly should not be compelled to conduct its business in open court where courtroom attendees would be able to observe the jury's deliberative process. Because of this understanding, our courts have a long-standing practice of providing all exhibits to juries to review in the privacy of the jury room. See, e.g., *State* v. *Wood*, 208 Conn. 125, 129–30, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *Capone* v. *Sloan*, 149 Conn. 538, 544, 182 A.2d 414 (1962); *State* v. *Wallace*, 78 Conn. 677, 678, 63 A. 448 (1906).

Having concluded that the trial court abused its discretion in failing to make any effort to provide the jury with the video and with the equipment needed in order to watch it in the privacy of the jury room, I now examine whether this error was harmful.[4] "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Favoccia*, 306 Conn. 770, 808–809, 51 A.3d 1002 (2012).

The defendant argues that the trial court's error was harmful because the video was central to his defense in that it contradicted Officer Christian Rodriguez' testimony that he fired at the defendant's motor vehicle, a Dodge Charger, as it ran over his foot. The defendant claims that the procedure for reviewing the video likely affected the weight the jury placed on the contents of the video and thus substantially affected the jury's verdict because: (1) the jury was unable to review the video up close, under its control, and on a small screen; and (2) there was an additional burden on the jury of having to come into the courtroom to review the video

without being able to discuss it simultaneously. In response, the state argues that any error by the trial court was harmless because there is nothing in the record to indicate that the jury had any desire to review the video during its deliberations and the jury viewed the video during the trial eight times in its entirety and viewed selected portions of the video approximately eight additional times. The state further notes that the defendant was able to use the video during his cross-examination of all three officers involved in the accident to exploit his claimed discrepancy in Rodriguez' testimony, and that he had also replayed the video during his summation of his theory that Rodriguez had lied about how he was injured. Lastly, the state argues that the error was harmless because its case against the defendant was strong for the following reasons: (1) the state corroborated Rodriguez' testimony that the defendant's Charger ran over his foot with the testimony of Officer Jose Rivera, who heard Rodriguez cry out in pain and saw him limping away as the Charger sped away; (2) an independent witness heard the gunfire, looked out his office window, and saw Rodriguez "hobbling" back toward his vehicle; (3) Rodriguez was taken to the hospital, treated for a "crush" injury and placed on light duty for one month; (4) the defendant fled the scene, and eventually was apprehended in Rochester, New York; and (5) the defendant made a request to another person that she misreport that the Charger had been stolen.

I agree with the state. Although the video should have been given to the jury to review in the privacy of the jury room, the defendant has not shown that its exclusion had a substantial impact on the jury's verdict. Despite being given the opportunity to review the video in open court, the jury never asked to do so. Further, given the short length of the video and the numerous opportunities that the jury had to view it during trial, the defendant has not provided this court with a fair assurance that the inability to review the video in the privacy of the jury room substantially affected the verdict. Notably, the state's case was strong. The state presented testimony of multiple witnesses to corroborate Rodriguez' account that the defendant's Charger ran over his foot, and the defendant's actions following the incident further weigh in favor of the strength of the state's case against the defendant. Therefore, I would conclude that it is doubtful that the jury's inability to watch the video in the privacy of the jury room influenced the jury's verdict in any appreciable way.

I therefore respectfully concur in the judgment.

[1] The lack of basic trial practice technology in our courtrooms is remarkable. Until our state courts begin to approach the level of technological capabilities that are available in the federal courts in Connecticut, it is my opinion that the proponent of the evidence should be required to provide the means by which an exhibit can be reviewed in the jury room in the same manner as he or she presented it during the trial. In other words, the proponent of video evidence should provide the jury with the proper play-

back equipment. Such a bright line rule would provide clear guidance to our state's courts and members of the bar, and, as a result, would avoid the very problem that is present in this case. In this increasingly modern era where digital exhibits are becoming more prevalent, the lack of proper equipment for such evidence impedes the well established "policy of the law that every tribunal for the trial of civil or criminal causes should have open to it the best legitimate means of acquiring such knowledge of the law and the facts as will enable it to decide the cases before it fairly and intelligently." (Internal quotation marks omitted.) *State* v. *Gould*, 241 Conn. 1, 13, 695 A.2d 1022 (1997). I agree with the majority, however, that the creation of such a bright line rule is best left to the Rules Committee of the Superior Court, which is vested with the power to establish rules of procedure for our trial courts. See, e.g., *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 779, 725 A.2d 948 (1999); *Oakley* v. *Commission on Human Rights & Opportunities*, 237 Conn. 28, 30, 675 A.2d 851 (1996).

[2] The defendant summarily asks this court, without any analysis or citation to relevant authority, to consider whether the trial court's withholding of the video from the jury room violated his constitutional rights to a fair trial and due process. As the Appellate Court noted; see *State* v. *Jones*, 140 Conn. App. 455, 460 n.1, 59 A.3d 320 (2013); and the defendant appears to concede to this court, these claims were not preserved at trial. As such, not only is this court "not required to review issues that have been improperly presented to this court through an inadequate brief"; (internal quotation marks omitted) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 300 n.9, 852 A.2d 703 (2004); but the defendant has failed to show that his claim even remotely satisfies the four prongs of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Accordingly, I decline to review the defendant's constitutional claim. See *State* v. *Osbourne*, 138 Conn. App. 518, 539–40, 53 A.3d 284 (holding defendant's claim that trial court improperly restricted viewing of video exhibit to courtroom during deliberations failed to meet second prong of *Golding* and was not manifest injustice constituting plain error), cert. denied, 307 Conn. 937, 56 A.3d 716 (2012).

[3] The record is unclear as to whether a computer was required to play the video or if it could have simply been played in a digital video disc player. As noted by the majority and the Appellate Court; see footnote 2 of the majority opinion; *State* v. *Jones*, 140 Conn. App. 455, 462 n.2, 59 A.3d 320 (2013); the following exchange took place during the predeliberation colloquy between the court and the parties:

"The Court: Well, my con—they need—they need—would need the laptop to play the video, is—right? I assume that's right, correct?

"[The Prosecutor]: Uh, hum.

"The Court: Is—is the—and I—does the laptop have any—other stuff on it besides the video?

"[The Prosecutor]: Yes." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 462 n.2.

On appeal to this court, neither party makes an argument that a specific piece of equipment was necessary to play the video. In light of my conclusion that the trial court abused its discretion due to its apparent lack of effort to accommodate the jury, the exact nature of the equipment needed to review the video is not critical to the resolution of this appeal.

[4] The defendant contends that allowing only for the replaying of the video in the courtroom in front of the court, both attorneys, and the defendant constituted structural error. This contention is without merit because not only does the defendant fail to show that his claim is of constitutional magnitude, he also has failed to show how the trial court's error infected the entire trial process through extrinsic factors. See *State* v. *Latour*, 276 Conn. 399, 411, 886 A.2d 404 (2005) ("[Structural error] cases do not involve trial error occurring during the presentation of the case to the jury but involve extrinsic factors not occurring in the courtroom. . . . These cases recognize that violation of some constitutional rights, such as the right to a trial by an impartial jury, may require reversal without regard to the evidence in the particular case."); see also *Vasquez* v. *Hillery*, 474 U.S. 254, 263–64, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (structural error due to systematic exclusion from grand jury of individuals based on race); *Whitus* v. *Georgia*, 385 U.S. 545, 549–50, 87 S. Ct. 643, 17 L. Ed. 2d 599 (1967) (structural error due to purposeful discrimination in selection of jurors); *Tumey* v. *Ohio*, 273 U.S. 510, 535, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (structural error when judge has financial interest in outcome of trial).