******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM T. JONES
(SC 19117)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa and Robinson, Js.

*Argued February 24—officially released November 11, 2014*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran,* former senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. Practice Book § 42-23 (a) requires that a trial court "shall submit to the jury . . . [a]ll exhibits received in evidence" for review during its deliberations. In this certified appeal, we consider whether a trial court may, consistent with Practice Book § 42-23 (a), require that a jury watch a digital video exhibit in open court during its deliberations rather than providing the jury with the equipment needed to watch the video in the privacy of the jury room. The defendant, William T. Jones, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court affirming the trial court's judgment of conviction, rendered after a jury trial, of assault of public safety personnel in violation of General Statutes § 53a-167c and engaging police in pursuit in violation of General Statutes § 14-223 (b). *State* v. *Jones*, 140 Conn. App. 455, 59 A.3d 320 (2013). The trial court in this case determined that it did not have access to equipment needed to play the video in the jury room during deliberations, so it required the jury, if it chose to watch the video again, to view it in open court. The defendant claims that the Appellate Court improperly concluded that this procedure complied with the mandate, set forth in Practice Book § 42-23 (a), that the trial court "shall submit" exhibits to the jury. We conclude that Practice Book § 42-23 (a) requires a trial court to make exhibits available for the jury's use during deliberations, but that a trial court has discretion, pursuant to its inherent authority to manage the trial process, to determine the means by which the jury reviews submitted evidence. Accordingly, we affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to the present appeal. Meriden police officers stopped the defendant's car after observing what the officers believed was a narcotics transaction involving the defendant. Shortly after stopping the car, and as the officers approached it on foot, the defendant drove away, running over an officer's foot. That officer, who had previously drawn his firearm, fired two shots at the defendant's car as it sped away. Police were unable to catch up with the defendant that day, but the defendant was later arrested in New York on a fugitive warrant. The state ultimately charged the defendant with second degree assault in violation of General Statutes § 53a-60 (a) (2), assault of public safety personnel in violation of § 53a-167c, and engaging police in pursuit in violation of § 14-223 (b).

At the defendant's trial, the state introduced, as an exhibit, a DVD containing a recording from a camera mounted inside one of the police cars present at the stop of the defendant's car. The camera, which was not pointed directly at the defendant's car, did not record the stop or the assault, but did capture the defendant's

car driving away and recorded the sound from the two gunshots.

Both parties used the video during the trial. The parties played the entire video for the jury a combined total of eight times, and played portions of the video about eight more times. Both parties also used it during each of their closing arguments. The defendant used the video principally to contradict the injured officer's testimony that he fired at the defendant's car as it ran over his foot. The video shows that no one was near the defendant's car when the shots are heard in the recording, so the defendant used the video to attack the testifying officer's credibility. In response, the state argued that the video captured only a portion of the stop and that other evidence confirmed that the assault took place, even if not at the exact time the injured officer thought that it had occurred.

On the morning of the day the jury began its deliberations, the defendant's counsel asked the trial court, for the first time, whether the jury would be able to view the video in the jury room during its deliberations. The trial court responded that it did not have any equipment to allow a viewing in the jury room. During the trial, the parties had used a laptop computer and a projector belonging to the prosecutor to play the video, but the trial court determined that it could not provide the computer to the jury because it contained other information not admitted into evidence. The trial court instead determined that it would instruct the jury that it could view the video in the courtroom, with the court and counsel present, by sending out a note.[2] The trial court later gave this instruction to the jury and sent them to deliberate.[3] The jury did not ask to see the video.

The jury deliberated for about an hour and then returned a verdict finding the defendant guilty of assault of public safety personnel and engaging police in pursuit, but acquitting him on the charge of second degree assault.

At sentencing, the defendant raised concerns about the manner in which the trial court made the video available to the jury and later moved for judgment of acquittal and a new trial. He argued that requiring the jury to view the video in the courtroom "unfairly and unduly reduced [the jury's] ability to freely discuss the facts of the case . . . ." The trial court denied the motion. The trial court explained that it had no means to facilitate the jury's viewing of the video inside the jury room and determined that the jury had sufficient opportunity to watch the video in open court, if it had chosen to do so. The trial court concluded that the defendant therefore suffered no prejudice and declined to set aside the defendant's conviction. Thereafter, the trial court sentenced the defendant to a total effective sentence of seventy-eight months imprisonment.

The defendant appealed from the trial court's judgment of conviction to the Appellate Court. *State* v. *Jones*, supra, 140 Conn. App. 455. The defendant claimed, among other things, that the trial court's ruling that the jury could view the video in open court, rather than in the jury deliberation room, violated Practice Book § 42-23 (a). Id., 459. The Appellate Court disagreed, concluding that the trial court has inherent authority to use its discretion to managing the trial process and that the trial court in this case did not abuse its discretion given the late notice of the defendant's concern and the unavailability of technology needed to view the video in the jury room. Id., 464–66. This certified appeal followed.

On appeal, the defendant claims that command that the trial court "shall submit" all full exhibits to the jury set forth in Practice Book § 42-23 (a) requires that the jury be allowed to review the exhibits in the privacy of the jury room. According to the defendant, this required the trial court (or the state) to provide the jury with equipment necessary to view a DVD. Because the trial court failed to do this, the defendant argues that it acted improperly, requiring a new trial. The defendant further asks us to interpret § 42-23 (a) to require, as a bright line rule, that the party offering an exhibit into evidence must also provide the jury with any equipment needed to review that evidence privately, in the jury room.

The state disagrees with the defendant's assertion that the trial court acted improperly and balks at the defendant's proposed bright line interpretation of § 42-23 (a). According to the state, the rule's command that the trial court "shall submit" exhibits to the jury requires only that the court give the jury the opportunity to study or consider the exhibit. Because the trial court has the inherent discretion to manage the proceedings before it, the state argues that the trial court may determine where and how the jury reviews submitted exhibits. Alternatively, the state asserts that even if the trial court's order violated § 42-23 (a), this did not prejudice the defendant and was, therefore, harmless error. Finally, the state objects to the defendant's request for a bright line rule. It argues that the diverse and constantly evolving types of digital evidence, and the equipment used to view that evidence, each raise unique considerations. The state, therefore, urges us to leave any rule making on this topic to the Rules Committee of the Superior Court, which is better suited to consider the many issues that are raised by new and various types of evidence.

For the reasons stated subsequently in this opinion, we conclude that, although Practice Book § 42-23 (a) requires trial courts to submit exhibits to the jury, that section does not control the manner in which exhibits must be submitted, and that the trial court retains discretion to determine the manner in which the jury exam-

ines submitted exhibits. We also decline to adopt the defendant's proposed bright line rule.

## I

Our interpretation of Practice Book § 42-23 (a) requires us to determine: (1) whether the trial court submitted the exhibit to the jury as required by § 42-23; and (2) if the exhibit was submitted, whether the trial court abused its discretion to manage the trial process when it decided the jury could view the submitted evidence in open court. We address these questions in turn.

## A

We turn first to the language of the rule of practice at issue, noting our standard of review at the outset. Our interpretation of the rules of practice is a question of law subject to plenary review. *State* v. *Heredia*, 310 Conn. 742, 755, 81 A.3d 1163 (2013). We interpret rules of practice in the same manner that we construe statutes. Id. We previously have set forth the principles that govern our interpretation. Id. As with statutes, if the text of a Practice Book provision and an analysis of its relationship to other related provisions yield a plain and unambiguous meaning, we apply that meaning to the case before us. Id., 755–56.

Practice Book § 42-23 (a) requires a trial court to make trial exhibits available for consideration or study by the jury. Section 42-23 (a) provides in relevant part: "The judicial authority shall submit to the jury . . . (2) All exhibits received in evidence." This section does not define the term "submit." That term's ordinary meaning, according to its dictionary definition, is "to send or commit for consideration, study, or decision" or "to present or make available for use or study . . . ." Webster's Third New International Dictionary (1993). Under this meaning of "submit," together with the definitive word "shall," which both parties agree is a mandatory command in this context,[4] § 42-23 (a) unambiguously requires that a jury be allowed to study and consider all trial exhibits. Trial courts thus lack discretion to deny the jury a meaningful opportunity to study and consider an exhibit during its deliberations.

Using this interpretation, we conclude that the trial court submitted the exhibit to the jury, in compliance with Practice Book § 42-23 (a), by making it available for review in open court.[5] There is no evidence in the record that the jury would have been unable to use or study the DVD's contents or that the deliberation process was impaired in any way by using the trial court's chosen procedure. Notably, the trial court's procedure is identical to the procedure that we expressly approved for submitting videotaped deposition testimony for review during deliberations. See *State* v. *Gould*, 241 Conn. 1, 14–15, 695 A.2d 1022 (1997). Accordingly, we conclude the trial court complied with § 42-23 (a).

B

Our interpretation and application of Practice Book § 42-23 (a) does not end our inquiry, however, because the text of that rule does not specifically prescribe where or how a jury's study of submitted exhibits must take place. These questions are the focus of the defendant's claims on appeal. Given the silence of § 42-23 (a) on this point, we conclude that the trial court retains discretion, pursuant to its inherent authority to manage trials before it, to determine how and where the jury shall study the exhibit. See *Fattibene* v. *Kealey*, 18 Conn. App. 344, 359–60, 558 A.2d 677 (1989) (in absence of rule of practice on point, trial court may rely on its inherent authority to manage proceedings, including authority to impose sanctions). We previously have explained that a trial court has "the authority to manage cases before it as necessary. . . . Deference is afforded to the trial court in making case management decisions because it is in a much better position to determine the effect that a particular procedure will have on both parties. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 256, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

This authority extends to determining the means by which the jury examines submitted exhibits. For example, in *Capone* v. *Sloan*, 149 Conn. 538, 544–45, 182 A.2d 414 (1962), a trial court permitted the jury to use a ruler to gauge distances on a map that the court had admitted into evidence. This court concluded that determining whether to permit the jury to use the ruler was a decision within the "sound discretion of the court" and that the trial court had not abused that discretion. Id.; see also *State* v. *Wood*, 208 Conn. 125, 129–30, 545 A.2d 1026 (trial court had discretion to allow party to provide each juror with copy of single exhibit for easier review), cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State* v. *Wallace*, 78 Conn. 677, 678, 63 A. 448 (1906) (trial court had discretion to permit jury to use magnifying glass to view photograph); cf. *State* v. *Gould*, supra, 241 Conn. 15 (concluding that videotaped depositions must be viewed in open court).

The manner in which the trial court should exercise this discretion depends principally on the nature of the exhibit and the risks posed by allowing the jury to review the exhibit in the jury room. See *State* v. *Gould*, supra, 241 Conn. 15 (nature of videotaped deposition testimony, and danger that jury might give it greater significance than trial testimony, requires that it be played in open court). Most trial exhibits are easily

given to the jury and may be studied without external aids. In such cases, these exhibits should be given to the jury for its examination in the jury room. Our trial courts have even given firearms and narcotics to juries for their private review. See, e.g., *State* v. *Rogers*, 177 Conn. 379, 381, 418 A.2d 50 (1979); *State* v. *Plaza*, 23 Conn. App. 543, 550–52, 583 A.2d 925 (1990), cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). Other exhibits, however, present more complex considerations. For example, toxic substances might present a danger to jurors and require precautions to permit safe review by the jurors. Unusually large exhibits might not allow for examination inside a smaller jury room. Additionally, some evidence, like the evidence in this case, might require ancillary equipment for the jury to perceive it in the manner intended.[6] These concerns apply to numerous types of electronic evidence, including digital video and audio recordings, software, websites, and unwieldy electronic documents or spreadsheets not easily converted to a paper equivalent. For these trickier exhibits, the trial court may use its discretion to craft a solution that permits the jury a reasonable and fair opportunity to study the exhibit at issue. Whether the trial court has properly exercised its discretion will depend on the particular circumstances presented by each case.

We turn now to whether the manner in which the trial court submitted the exhibit to the jury in the present case amounted to an abuse of its discretion. We conclude that the trial court acted properly under the circumstances. The late request by the defendant and the lack of readily available and suitable equipment to play the video in the jury room left the trial court with little choice but to require the jury to view the video in open court. The defendant's counsel did not offer any equipment of his own and the laptop used to play the video during trial could not properly be sent into the jury room because it contained information not admitted into evidence. In light of the lateness of the defendant's request, the trial court was under no obligation to delay deliberations, and keep the jury waiting while the court or the parties searched for or purchased clean equipment needed to play the DVD in the jury room. Therefore, the trial court properly exercised its discretion in this case.

The defendant claims, however, that the trial court abused its discretion because requiring the jury to review the video in open court in this case "relegated [the video] to muteness" or "second-class status." We disagree.

First, the trial court did not render the video mute because its order did not prevent the jury from reviewing the video during deliberation; it simply changed the location where the jury could view it. Second, the trial court's instruction mitigated the risk of

the jury singling out the video for less consideration than other evidence by explaining to the jury that the video was treated differently than other trial exhibits only because of the lack of available playback equipment. The trial court said nothing to discourage the jury from viewing the video, nor did it indicate that the jury should give the video any more or less weight than other evidence.

The defendant cites cases from other jurisdictions in support of his arguments, but those cases hold only that a trial court *may* provide playback equipment to the jury so that it can review an exhibit in the jury room. See *United States* v. *Rose*, 522 F.3d 710, 714–15 (6th Cir. 2008); *United States* v. *Bizanowicz*, 745 F.2d 120, 123 (1st Cir. 1984); *Arlton* v. *Schraut*, 936 N.E.2d 831, 839–40 (Ind. App. 2010); *State* v. *Castellanos*, 132 Wn. 2d 94, 100–101, 935 P.2d 1353 (1997). In fact, one of the defendant's cited cases expressly endorses the method used by the trial court here. See *Arlton* v. *Schraut*, supra, 839 ("[t]he trial court could also have properly given the jury the videotape during deliberations and allowed them to view the videotape in open court").

The defendant also argues that the trial court's method improperly impeded the jury's ability to view and contemporaneously discuss the video in private by requiring the video to be viewed in open court, before counsel and the defendant. We agree that permitting the jury to view exhibits in private is preferred, but the trial court's method in this case did not preclude the jury from studying or considering the exhibit, as Practice Book § 42-23 (a) requires. Nothing in the trial court's instructions precluded the jury from discussing the video in private, nor did the trial court require the jury to discuss the video in open court, while watching it. The jury was free to watch the video in court and return to the jury room to discuss, and repeat if necessary. For example, in *State* v. *Osbourne*, 138 Conn. App. 518, 539–41, 53 A.3d 284 (2012), the trial court required the jury to view a video exhibit in open court. Using this procedure, the jury viewed a video exhibit at least twelve times during its deliberations and had the video played back at various speeds and paused at certain frames. Id., 536–37, 541.[7] Although perhaps a little more burdensome, this accommodation afforded the jury a meaningful opportunity to view the video in court, but deliberate about it in private. Accordingly, we conclude that the trial court did not abuse its discretion.

II

Lastly, we address the defendant's invitation to this court to interpret Practice Book § 42-23 (a) to require the proponent of any evidence also to provide any ancillary equipment necessary for the jury to examine that exhibit in the jury room. We decline the invitation.

The issues raised by the ever increasing prevalence of digital evidence do not lend themselves to resolution through the creation of a one size fits all solution made in the context of a single appeal. To be sure, we strongly believe that the best practice in these circumstances is for the parties and the court to address this issue before the trial to come up with a solution agreeable to all involved—one that allows the jury to view submitted evidence in the jury room. See *Arlton* v. *Schraut*, supra, 936 N.E.2d 840 ("[i]deally, these issues should be dealt with well before deliberations begin, even before trial, so that the trial court does not have to scramble just before deliberations trying to find a way to let the jury access admitted digital evidence"). The parties should confer with one another in advance to determine which exhibits, if any, will require equipment for the jury's use and to determine how that equipment will be procured and given to the jury. Any proposed solutions or disputes should be presented to the trial court for its review well in advance of jury deliberations. In light of the long-standing practice of our courts to provide juries all exhibits for their review in the privacy of the jury room; see, e.g., *Capone* v. *Sloan*, supra, 149 Conn. 544; the preferred option is for juries to receive all exhibits, when feasible, in the jury room. Nevertheless, there are those cases, such as this, when the circumstances will not permit such a review. Numerous issues may arise when it comes to providing the jury access to digital evidence. These issues could include, for example, whether the necessary equipment is available for use, whether the parties can afford to provide the equipment, whether the jury possesses the skills needed to operate the equipment, and whether the jury could improperly manipulate or destroy the exhibit. See, e.g., *Arlton* v. *Schraut*, supra, 840 (noting the "unintended issues" that may arise from providing jury with direct computer access).

Resolution of these issues is best left to the parties and the trial court, who are better equipped to respond to the nuances of each case. To the extent that the creation of generally applicable rules on this topic are necessary or appropriate, that responsibility is left to the Rules Committee of the Superior Court, which is vested with the power to establish rules of procedure for our trial courts. See, e.g., *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 779, 725 A.2d 948 (1999); *Oakley* v. *Commission on Human Rights & Opportunities*, 237 Conn. 28, 30, 675 A.2d 851 (1996).

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA and ESPINOSA, Js., concurred.

[1] We granted certification limited to the following question: "Did the Appellate Court properly conclude that the trial court's decision requiring the jury to view, during its deliberations, certain video evidence in open court complied with Practice Book § 42-23?" *State* v. *Jones*, 308 Conn. 911, 61 A.3d 1099 (2013).

The full extent of the predeliberation colloquy between the parties and the trial court on this topic is as follows:

"[Defense Counsel]: Your Honor, just, if I may inquire? Is the—the video—this whole setup of the electronics going to be left in this courtroom or—or into the jury deliberation room?

"The Court: No, it's just going to be left here. My—my view is, I don't have anything to send into them for them to play the video. If they want to have the video replayed, they're going to have to request it and we'll play it in the courtroom. And, in fact, I can tell them that.

"[Defense Counsel]: Without us present?

"The Court: No, no. My view is, anything that's done in the courtroom, counsel and [the defendant] and I should be present. So, basically, it's just like a playback of testimony. If they want a replay of the video, I'll have them come out here and we'll replay the video.

"[Defense Counsel]: I—it seems to me, and I'm not trying to be difficult here, Your Honor, but for a free flow of—of conversation where they can stop and start and stop and start the video and actually deliberate about the video, shouldn't it—shouldn't they actually be alone when they're looking at this video?

"The Court: I don't think that's necessary. I don't have anything for them to play it on in the jury room. I don't have anything to send it in with, so they're just going to have to come out and ask for it.

"[Defense Counsel]: Couldn't all this equipment be sent in?

"The Court: Well, my con—they need—they need—would need the laptop to play the video, is—right? I assume that's right, correct?

"[The Prosecutor]: Uh, hum.

"The Court: Is—is the—and I—does the laptop have any—other stuff on it besides the video?

"[The Prosecutor]: Yes.

"The Court: Yes. That's the problem. I can't be sending anything into the jury room that has other documents or items on it that haven't been made full exhibits. I'll make it clear to them, if they want to [see] the video [again], then we can replay it—they can request it and we'll play it in the courtroom." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 140 Conn. App. 461–62 n.2.

³ The trial court gave the following instruction immediately before dismissing the jury to deliberate: "Good morning, ladies and gentlemen. You've now heard my instructions to you on the law, so it's just about time for you to begin your deliberations. One other matter that I just wanted to bring to your attention, the video that has been made a full exhibit in this case is obviously something that you can review again if you'd like. Unfortunately, I can't send anything in with you in order for you to be able to view that video in the jury deliberation room. I don't have a separate DVD player that I can send in with you. So if at any point you want to revisit that video and replay that video, just send out a note to me, we'll reconvene in the courtroom and we'll replay that video for you."

⁴ But see, e.g., *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000) ("the use of the word shall, though significant, does not invariably establish a mandatory duty" [internal quotation marks omitted]).

⁵ We note that our review of whether the trial court complied with Practice Book § 42-23 (a), a nondiscretionary rule, is plenary. *State* v. *Sheriff*, 301 Conn. 617, 627 n.6, 21 A.3d 808 (2011).

⁶ Simply sending the DVD containing the video at issue in the case to the jury room would not have complied with Practice Book § 42-23 (a). See part I A of this opinion. To meaningfully study and consider the video exhibit at issue in this appeal, the jury needed suitable equipment to view the video files stored on the DVD.

⁷ In *Osborne*, the Appellate Court concluded that this procedure was not a manifest injustice amounting to plain error. *State* v. *Osbourne*, supra, 138 Conn. App. 540.